THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* MARY NIXON et al., Appellants.

Crimes — disorderly conduct — appeal — persons walking four
abreast on sidewalk, creating no disturbance, may not with-
out warning by police be arrested for disorderly conduct —
whether they are participants or sympathizers in a labor dis-
pute immaterial, in absence of disorder — persistence in march-
ing up and down street after warning by police supports finding
of guilt — Court of Appeals may review sufficiency of evidence
to sustain judgment of court of inferior jurisdiction even where
no motion was made to dismiss.

1. A number of pedestrians walking, quietly, four abreast on a side-
walk, creating no excitement or disturbance, may not, without warning
by the police, be arrested for disorderly conduct and sentenced to a
term of imprisonment.

2. Whether they are participants or sympathizers in a labor dispute
is immaterial, where there is no evidence from which any inference
may be drawn that their quiet presence in numbers at this particular
place was in some way calculated to make the labor dispute disorderly.
In the absence of evidence that they caused substantial annoyance to
others, or persisted in their conduct after protest from others or warn-
ing from a police officer, their conviction cannot be sustained.

3. Where, however, as to others there is evidence that before they
were arrested they were warned by police officers that they must not
march up and down the street in large groups, and enough is shown to
justify the officers in giving the warning, persistence in parading the
street in groups thereafter, supports a finding of guilt and their con-
viction must be sustained.

4. Even where there is no motion to dismiss, this court may review
the sufficiency of the evidence to sustain a judgment of a court of
inferior jurisdiction where the case has been submitted to the judge
to pass upon all questions, both of law and fact.　(*People* v. *Bresler*,
218 N. Y. 567; *People* v. *Robinson*, 237 N. Y. 567, overruled.)

*People* v. *Nixon* (sub nom. *People* v. *Friedman*), 130 Misc. Rep.
525, reversed.

(Argued April 9, 1928; decided May 1, 1928.)

APPEAL, by permission, from a judgment of the Appel-
late Term of the Court of Special Sessions of the city

of New York, entered September 27, 1927, which affirmed a judgment of a Magistrate's Court of the city of New York convicting the defendants of the crime of disorderly conduct.

*Aiken A. Pope* and *Jacob M. Mandelbaum* for appellants. The defendants were engaged in peaceable, quiet and orderly picketing and did not provoke or excite others to breach the public peace as disclosed by the record, and were, therefore, not guilty of the offense of disorderly conduct as defined in section 1458 of the Consolidation Act. (*People ex rel. Clark* v. *Keeper*, 176 N. Y. 465; *People ex rel. Frank* v. *Keeper*, 38 Misc. Rep. 233; *Matter of Newkirk*, 75 N. Y. Supp. 777; *People* v. *Phillips*, 245 N. Y. 401; *National Protective Association* v. *Cumming*, 170 N. Y. 315; *Johnston Harvester Co.* v. *Mainhardt*, 60 How. Pr. 168; 24 Hun, 489; *Rogers* v. *Evarts*, 17 N. Y. Supp. 264; *Reynolds* v. *Everett*, 67 Hun, 294; 144 N. Y. 189; *Kissam* v. *United States Printing Co.*, 199 N. Y. 76; *Foster* v. *Retail Clerks' Protective Assn.*, 39 Misc. Rep. 48; *Sun Printing Assn.* v. *Delaney*, 48 App. Div. 623; *Mills* v. *United States Printing Co.*, 99 App. Div. 605; *Jones* v. *Maher*, 62 Misc. Rep. 388; 141 App. Div. 919.)

*Joab H. Banton,* District Attorney (*Felix C. Benvenga* and *John C. McDermott* of counsel), for respondent. The defendants were properly convicted. (*Case of Twelve Commitments*, 19 Abb. Pr. 394; *People* v. *Mansi*, 129 App. Div. 386; *Cohen* v. *Warden of Workhouse*, 150 N. Y. Supp. 596; *People* v. *Lipschitz*, 120 Misc. Rep. 633; *People* v. *Gertner*, 124 Misc. Rep. 114; *People ex rel. Clarke* v. *Keeper*, 176 N. Y. 465; *People ex rel. Burke* v. *Fox*, 205 N. Y. 490; *Steinert* v. *Sobey*, 14 App. Div. 505.)

LEHMAN, J. Twenty persons, named as defendants in this case, were arrested in the early morning of May 27th, 1927, while walking on the sidewalk on

the southerly side of West Twenty-ninth street. The police officer, who arrested them, charged in the sworn complaint that they were in " West 29th Street using threatening, abusive and insulting behavior, with intent to provoke a breach of the peace, and whereby a breach of the peace might be occasioned, that said defendants at the hour of 7.30 A. M. did then and there while picketing with a number of others parade up and down in mass formation, thereby obstructing the sidewalk and causing pedestrians to use the roadway." Nineteen of the defendants have been convicted upon this charge, after a trial before a magistrate, and have been sentenced to terms of imprisonment in the workhouse.

This appeal is one of six appeals from judgments of conviction of about one hundred and twenty people, of whom about fifty are women. All the appeals were argued together. The complaints in all the cases are similar. The alleged offenses all occurred at the same place and within the space of a few days. They were all tried before the same magistrate, and it is evident that the magistrate assumed that the defendants, found guilty in all these cases, were walking on this street as part of some tactics adopted to further the interests of a party to a strike or labor dispute in the fur industry. In some cases there is vague evidence which perhaps supports this assumption.

Though the evidence in the six cases is not identical, and the differences may produce varying consequences, yet the determination of the questions involved in the instant case, which the parties chose as the basis of the oral argument in this court, will dictate the answer to most of the questions presented in the remaining cases on appeal. In this case the police officer who made the arrest testified that he had the defendants under observation for ten minutes. They were walking on the south side of Twenty-ninth street between Sixth and Seventh avenues. They were " parading " four abreast. The

sidewalk was about twelve feet wide. The defendants in walking four abreast occupied about six feet of the sidewalk. " The regular amount of traffic was just barely getting through." Some persons were " caused " to enter the roadway. The officer stated: " I fell in line with them and walked up to the southwest corner of 29th Street and Sixth Avenue. When they got to the corner they turned around and they marched back again on the same side and a few persons were caused to enter the roadway again. I then placed them under arrest." Another officer assisted in the arrest. Neither officer warned the defendants before the arrest. The defendants apparently submitted to arrest without protest.

We have set forth the entire testimony almost verbatim. There is no suggestion in the record that the defendants' march up and down the street was not quiet and orderly. There is no suggestion that the defendants' demeanor was threatening, abusive or insulting or that any person on the street or elsewhere believed that he was being threatened, insulted or abused. Nineteen or twenty persons walked up and down a busy street four abreast. They were guilty, we may well concede, of atrociously bad manners, and they discommoded some other persons lawfully using the street, to the extent that a few pedestrians were caused to enter the roadway. There is no evidence that the persons discommoded showed any particular annoyance. Perhaps bad manners are too usual to evoke unusual irritation or annoyance. As yet bad manners have not been made punishable by imprisonment. The question presented here is whether the defendants' conduct went beyond mere bad manners and tended towards a breach of the peace.

It is difficult to define exactly and comprehensively the kind of conduct which " tends to a breach of the peace," though a " breach of the peace " was punishable at common law. A definition has been essayed by the Legislature in section 722 of the Penal Law. " In cities of

five hundred thousand inhabitants or over any person who, with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, * * * (2) acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; (3) congregates with others on a public street and refuses to move on when ordered by the police." We do not now decide whether under sections 1458 and 1459 of the Consolidation Act, a magistrate has discretion to find that conduct which does not fall strictly within the offense defined by the Legislature may nevertheless constitute disorderly conduct which tends to a breach of the peace. At least the discretion confided to a magistrate cannot be without limits. The act complained of must at least be one which reasonably does tend to a breach of the peace, and it is not without significance that the Legislature has made " congregating on the street " a criminal offense only when the offender refuses to move on when ordered by the police.

Though the charge recites that the offense charged was committed while the defendants were picketing, no evidence was produced to sustain this allegation. Doubtless both the magistrate and the defendants assumed, even without proof, that a labor dispute existed in the fur trade at that time, and that the defendants were walking in the street in pursuance of some tactics intended to advance the interest of a party or parties to that dispute. Even if we, also, should assume the existence of such facts without proof, the question before us would remain unaffected by such facts. It has been said at times that picketing in large numbers near a place of business where a strike is in progress is in itself a threat of violence, and invites counter-violence. Circumstances may in particular cases justify a finding to that effect. Here we are not informed of the nature or extent of the labor dispute, if such there was. If there was a strike on the block where the defendants were walking, it may, for aught that appears, have

been in connection with a business conducted on the top floor of one of the loft buildings along the street. There is nothing to show that any other person could have regarded the defendants' conduct as a threat or as calculated to coerce or impede any one. In the absence of evidence, we may not infer that the conduct of the defendants was intended as a threat, or could be so construed, or was an incentive to violence by others. Even if the defendants were parties to a labor dispute, no circumstances are shown which, it is even claimed, might possibly be considered as an excuse for or palliation of conduct constituting an invasion of the rights of the public. On the other hand, no circumstances have been shown which would give the color of disorder and violence to conduct which is otherwise colorless. Upon this record no question is presented of the rights of parties to a labor dispute to the use of the streets for their own purposes — or of any abuse by them of such rights. The sole question is whether a number of pedestrians walking, quietly, four abreast, on the sidewalk, creating no excitement or disturbance, may without warning by the police be arrested for disorderly conduct and sentenced to a term of imprisonment.

To us it seems that there should be no doubt of the answer to that question. Men and women constantly congregate or walk upon the streets in groups, quite oblivious of the fact that in some degree they are thereby causing inconvenience to others using the street. A public meeting may have aroused such interest that groups of men and women continue the discussion while walking up and down the street. Groups linger in quiet social converse after the religious edifice where services have been held is emptied. School children and college youths, laborers, athletic " fans " and church members, perhaps even judges, do at times congregate or walk upon the streets in numbers sufficient to cause other pedestrians to stand aside or step into the roadway. Surely

such conduct is not always " disorderly " and does not always tend to a breach of the peace. The magistrate may draw distinction between innocent and wrongful conduct, but finding of guilt must be based upon logical inference from the circumstances of the case. Of course, no one urges that distinction may be based merely upon difference of social or economic position. Here the fact, if it be a fact, that the defendants are participants or sympathizers in a labor dispute, is immaterial, since there is no evidence from which any inference may be drawn that their quiet presence in numbers at this particular place was in some way calculated to make the labor dispute disorderly. In the absence of evidence that the defendants caused substantial annoyance to others, or persisted in their conduct after protest from others or warning from a police officer, we find the evidence insufficient to sustain the conviction of the defendants in this case.

In the case of *People* v. *Friedman* (248 N. Y. 531) the evidence produced to sustain the charge is in all material respects similar to the evidence produced in the instant cases. We find that it does not sustain the judgment of conviction. In the other four cases the circumstances are different. There the evidence, though meagre and unsatisfactory, yet seems to us sufficient to support a finding that the defendants acted recklessly of the rights and convenience of others, and that their conduct tended to a breach of the peace.

In all these four cases there is evidence that before the defendants were arrested they were warned by police officers that they must not persist in marching up and down the street in large groups. Police officers are guardians of the public order. Their duty is not merely to arrest offenders but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions. Present at the point where the defendants were congregating

they might early sense the possibility of disorder.  Even a protest from pedestrians who were annoyed by the defendants' conduct might be a significant element in determining whether persistence in such conduct was wrongful.  Enough has been shown in these cases to justify the officers in warning the defendants.  Refusal to heed the warning so given; persistence in parading the street in groups thereafter, is, perhaps, so significant of a contumacious disregard of the rights of others that it supports the finding of guilt of the defendants.  In these cases the judgments must be affirmed.

We have considered the question of whether there is any evidence to sustain the finding of guilt in the instant case.  The district attorney has not urged that upon this record we have no jurisdiction to review that question.  Our jurisdiction is, of course, limited in these cases to a review of questions of law, and that jurisdiction may not be extended by consent.  We are, therefore, compelled to determine whether we may review the questions argued, though no objection to such review has been interposed by the People.

Ordinarily a question of law is raised only by exception.  That rule applies in criminal as well as civil cases, and in inferior courts as well as in courts of general jurisdiction.  (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276.)  The rule is not entirely without its limitations.  It " must be interpreted in the light of reason and subject to certain inherent limitations.  Ordinarily the question which is presented arises on the trial where full opportunity is presented to take an exception and where, generally, justice and fairness require that one should be taken at the time if the party is dissatisfied with the conduct of the trial, and it is concerning such a situation as this that the rule is constantly reiterated and enforced that an exception must be taken for the purposes of appeal to this court.  But a case may arise where there is no opportunity to take an exception, and such is the

present one." (*Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228, at p. 235.)

Here the defendants pleaded not guilty. After hearing the evidence adduced against them, the magistrate decided that the charge against them was sustained. Dissatisfaction with the conduct of the trial must be shown by timely exception. Without such exception we may ordinarily not review the *conduct* of a trial. Magistrates and other judges of inferior courts pass upon questions of fact and of law. Whether the evidence sustains a decision or judgment is a question of law, and may be reviewed by this court unless an appellant by failure to make appropriate motions or to take appropriate exception has waived his right to urge it. Where a formal decision must be made by a court, the Civil Practice Act, section 445, provides for the taking of an exception to a ruling upon a question of law. In the absence of such an exception there can be no review by this court. No provision is made by statute or customary practice for an exception to the decision or judgment of a magistrate or other judge of an inferior court who passes upon questions of fact and of law, without the entry of a formal decision. In the case of *People* v. *Friedman* (248 N. Y. 531), decided herewith, the defendants moved for a dismissal of the charge, and the exception to the denial of the motion unquestionably permits us to review the question of law. In the instant case of *People* v. *Nixon*, no such motion was made, and the question arises whether by failure to make such motion the defendants conceded " that issues of fact, to be determined by the trial court, were created by the evidence and precluded themselves from asserting and asking the appellate courts to determine that the judgment of the trial court was wholly without support in the evidence." (*Seeman* v. *Levine*, 205 N. Y. 514.)

Doubtless where the trial is before a court and jury, even in an inferior court, failure to move for the dismissal

of the complaint or charge and acquiescence in the submission of questions of fact to the jury is tantamount to a concession that issues of fact to be determined by the jury were created by the evidence. In such case the submission of issues of fact to the jury is itself a ruling made in the course of the trial that such issues exist, and objection in appropriate form should be offered and an exception may and should be taken at the time the ruling is made, if a party is dissatisfied with the ruling. In the case of *Seeman* v. *Levine* (*supra*) this court held that even where there is no jury the failure to move to dismiss before decision by the judge has the same effect. That case was a civil case, but it has been followed by this court in criminal cases. (*People* v. *Bresler*, 218 N. Y. 567; *People* v. *Robinson*, 237 N. Y. 567.)

These cases cannot be distinguished from the case at bar. We must refuse to review the question of whether there is evidence to sustain the judgment, or overrule the earlier decisions of this court. Further consideration, with the advantage of new experience, has convinced us that our earlier decisions were wrong. Where questions of fact and law are both decided by the judge, a submission to him of all questions after the evidence is taken is not, in truth, a concession that issues of fact are raised by the evidence. Litigants present to the judge the evidence to sustain their respective contentions. He must decide the effect of the evidence. We know, now, that especially in courts where judicial proceedings are often informal, a requirement that a party must at his peril separate questions of law from questions of fact and move for a decision on questions of law before final submission of the case, does not facilitate the administration of the courts and does at times result in injustice.

The instant case shows the artificiality of the rule which we have heretofore followed, and that it is out of harmony with the actual proceedings in the courts. The

defendants have pleaded not guilty. They have not controverted the evidence produced against them. Their attitude has consistently been that the evidence did not justify conviction. In order to avail·themselves of the protection of the law which they invoke, they should not be compelled to go through the form of a motion to dismiss. Even the People do not contend that the defendants conceded the sufficiency of the evidence against them or that the judge was not required to pass upon that question when he rendered judgment. It is right that this court should hesitate to overrule a previous decision, but when convinced that an artificial rule of practice, created by it, is erroneous and hampers the administration of justice, it is its duty to refuse to perpetuate previous error. We, therefore, hold that even where there is no motion to dismiss, this court may review the sufficiency of the evidence to sustain a judgment of a court of inferior jurisdiction where the case has been submitted to the judge to pass upon all questions, both of law and fact.

The judgment of the Court of Special Sessions and that of the City Magistrate's Court should be reversed and defendants discharged.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.