Burke, J.
Defendants were convicted of disorderly conduct (Penal Law, §722) in the Magistrates’ Court of the City of New York. Leave to appeal here has been granted by a Judge *330 of this court from an affirmance of the conviction of the Appellate Part of the Court of Special Sessions, one Judge dissenting. The complaint, signed by the arresting officer, charged that on February 22, 1956, from about 10:40 a.m. to 10:55 a.m. the defendants “ committed the offense of disorderly conduct in violation of Sec. 722 Sub 2 of the Penal Law, in that with intent to provoke a breach of the peace and under circumstances whereby the breach of the peace might be occasioned, the defendant[s] did walk back and forth together ” in front of the visitors’ entrance to the United Nations at East 45th Street and First Avenue in New York City; “the defendant ‘Jane Doe ’ [Lydia Collazo] did carry a placard and the defendant Cabcell did approach various passersby and handed them or attempted to hand them leaflets; that by their actions the defendants did interfere with and obstruct the free entrance and egress of persons through above mentioned visitors’ entrance; that when asked by deponent to move away from said area; the defendants refused to do so. ”
It should be noted at the outset that nothing turns on the agreements executed between the United States and the United Nations concerning the maintenance and police protection of the United Nations headquarters, referred to in the briefs before us and commented upon by the Magistrate below. The case arises solely under New York law. The arrest was made by a New York City policeman on property concededly within his jurisdiction and the conviction was under section 722 of the Penal Law. No suggestion was made by the Magistrate that the conviction was bottomed upon any other agreement or provision of law nor is it so contended by the People here. Accordingly, our inquiry is directed to the sufficiency of the convictions under section 722. In so doing we pass the constitutional objections made by appellants for the reasons set forth. This is consonant with the firm policy of the law not to decide constitutional questions unless their disposition is necessary to the appeal (Lynbrook Gardens v. Ullmann, 291 N. Y. 472; Matter of Peters v. New York City Housing Auth., 307 N. Y. 519, 527-528).
The material facts were virtually undisputed. The arresting officer, witness for the People, testified that at the' time mentioned in the complaint the defendant Lydia Collazo was walking back and forth, covering a distance of some 20 feet *331 in front of the East 45th Street entrance to the United Nations, carrying a placard which read “Release the Puerto Rican Political Prisoners ” and on the opposite side “We Demand Our Independence ”. The defendant John Cárcel was standing by the entrance distributing leaflets. Every few minutes he moved to another spot on the sidewalk, covering, at a slower pace, the same area as did Miss Collazo. According to the officer “ Quite a few people came over to the entrance ” and the defendants “were blocking the pedestrians’ right of way.” Both were ordered by the policeman to move to the other side of the street but refused and were thereupon arrested for disorderly conduct. Defendants’ version was substantially the same. Cárcel testified that while distributing the leaflets he kept moving to avoid the people entering the United Nations premises. Miss Collazo corroborated this and added that the defendants were quite some distance apart; neither of them blocking the passage of any pedestrians seeking entrance.
Although the defendants were specifically charged with a violation of subdivision 2 of section 722, it is settled that a judgment of conviction in a case such as this will be affirmed if the evidence establishes a violation of any of the subdivisions of that section (People v. Peiner, 300 N. Y. 391, 398; People v. Hipple, 263 N. Y. 242, 244; People v. Hussock, 6 Misc 2d 182, cert, denied 312 U. S. 659; People v. Kunz, 205 Misc. 316, 321). In light of this, the allegations of the complaint and the proof adduced require a consideration of two of the subdivisions. The pertinent provisions state: “§ 722. Disorderly Conduct. Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: * * *
“ 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others;
“ 3. Congregates with others on a public street and refuses to move on when ordered by the police ”.
It is abundantly clear that the conduct sought to be deterred by subdivision 2 above is considerably more serious than the apparently innocent and, so far as appears from the record, inoffensive conduct of the defendants here. The common-law definition of ‘ ‘ breach of peace ’ ’, though not controlling, is helpful in ascertaining the nature of the acts proscribed by the *332 statute. In People v. Most (171 N. Y. 423, 429) it was defined as a “ disturbance of public order by any act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.” (See People v. Perry, 265 N. Y. 362, 364; People v. Pieri, 269 N. Y. 315, 322; Cantwell v. Connecticut, 310 U. S. 296, 308.) Guided by this definition, the courts have indicated that something more than a mere inconveniencing of pedestrians is required to support a conviction under subdivision 2. As was stated in People v. Nixon (248 N. Y. 182, 187-188) “ Men and women constantly congregate or walk upon the streets in groups, quite oblivious of the fact that in some degree they are thereby causing inconvenience to- others using the street. A public meeting may have aroused such interest that groups of men and women continue the discussion while walking up and down the street. Groups linger in quiet social converse after the religious edifice where services have been held is emptied. School children and college youths, laborers, athletic ' fans ’ and church members, perhaps even judges, do at times congregate or. walk upon the streets in numbers sufficient to cause other pedestrians to stand aside or step into the roadway. Surely such conduct is not always ‘ disorderly ’ and does not always tend to a breach of the peace.” In the Nixon case it was held that there was insufficient evidence to warrant a conviction under subdivision 2 of section 722, although it was shown that the 20 defendants were parading on a New York City street 4 abreast on a sidewalk only 12 feet wide. “The regular amount of traffic was just barely getting through ” (p. 185) and the obstruction caused by the pickets was such that some people were caused to enter the roadway to pass. Certainly the evidence against defendants in the case at hand was no more impressive than that offered by the People in the Nixon case. There is absolutely no showing here that defendants caused any serious annoyance to pedestrians or that their manner was threatening or abusive. Indeed, the only evidence upon which the conviction might be predicated was the arresting officer’s simple statement that the defendants “were blocking the pedestrians’ right of way ”. That evidence we hold to be insufficient (People v. Nixon, supra; People v. De Cecea, 6 Misc 2d 213; People v. Kieran, 6 Misc 2d 245; People v. Barisi, 193 Misc. 934, 935; People v. Lo Vecchio, 185 Misc. 197).
*333 A more serious question is presented when we consider subdivision 3 of section 722. It is clear that the gravamen of the offense in that case is not so much the conduct of the defendant as it is the refusal to desist from that conduct after being ordered to by the police. Thus where a member of the Bar stood quietly conversing with a group of friends on a city street and refused to accede to a policeman’s request to move on, it was held that the refusal constituted disorderly conduct under subdivision 3, although the act of the defendant, in the absence of a policeman’s order, would undoubtedly not have warranted a conviction under subdivision 2. (People v. Galpern, 259 N. Y. 279; People v. Nixon, supra, pp. 188-189.) But before the refusal to heed a policeman’s warning can serve as the basis for a conviction under subdivision 3, it must be shown that defendants were “ congregating with others ” at the time the order was refused. That is not the case here. The term “ congregating ” implies and is usually applicable to the coming together of a considerable number of persons (Powell v. State, 62 Ind. 531), or a crowd (Webster’s New Collegiate Dictionary; The Oxford Dictionary [1923]) and a crowd has been defined as a throng, multitude or great number of persons (People v. Phillips, 245 N. Y. 401, 402). The term “ congregates with others ”, as used in the statute, requires at the very least three persons assembling at a given time and place (People v. Lo Vecchio, 185 Misc. 197, 201, supra). It would be an unjustifiably liberal interpretation of subdivision 3 and at variance with the strict construction called for in these cases to hold that the defendants here, only two in number and as appears from the record not even standing together, were “ congregating with others ”. Investigation of the cases decided under this provision fails to reveal any contrary holding. In the cases upholding convictions there was either a large group (People v. Bogin, 248 N. Y. 530); a group of friends (People v. Galpern, supra); a number of persons (People v. Hipple, supra); or a crowd (People v. Friedman, 6 Misc 2d 277; People v. Hussock, supra; People v. Garvey, 6 Misc 2d 266).
Accordingly, the convictions should be reversed and the complaint dismissed.